**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTIN CHIKEREMA,** | : | **CIVIL NO. 1:18-CV-1031** |
| | : | |
| **Petitioner,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CRAIG LOWE, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.      Factual Background

This habeas corpus petition, which was filed by an immigrant detainee who has been in custody without individualized bond consideration for the past 17 ½ months, illustrates how the law defining the due process rights of aliens who are detained pending completion of removal proceedings remains in a state of flux. Several factors combine to create a shifting legal terrain in this field. First, these claims are considered against a complex statutory and regulatory framework, which draws distinctions between various classes of aliens based upon whether they have lawfully entered the country or are arriving aliens who present themselves at our nation's borders. The prior criminal record of the alien, if any, can also affect any statutory entitlement to bond consideration under the Immigration and Naturalization Act. Furthermore, the status of the agency administrative proceedings, which includes whether the alien's case is in pre-removal proceedings

1

or whether the alien is subject to a final order of removal, is a material fact that must be considered when evaluating federal habeas corpus petitions filed by immigration detainees. Given the many variables that courts consider in deciding these cases, it is hardly surprising that, for litigants and the courts alike, the resolution of these petitions often calls upon us to traverse an uncertain legal landscape, mindful of the fact that our decisions profoundly affect the lives and liberties of others. This case aptly illustrates the shifting legal sands that define litigation in this field.

The pertinent facts can be simply stated:[1] The petitioner, Martin Chikerema, is a citizen and native of Zimbabwe admitted to the United States at Pittsburgh, Pennsylvania on or about December 24, 1994 as a nonimmigrant student. Chikerema overstayed his student visa and on August 18, 2002, immigration officials served him with a Notice to Appear and charged him as removable pursuant to § 237(a)(1)(C)(i) of the Immigration and Nationality Act (INA). Following immigration proceedings, on May 11, 2006, an immigration judge in Chicago, Illinois granted Chikerema asylum, and his immigration status was adjusted to that of a lawful permanent resident on October 26, 2011.

On April 4, 2017, Chikerema was convicted in the United States District Court for the Southern District of Indiana of filing false tax returns in violation of 26 U.S.C.

---

[1] This factual narrative is derived from the exhibits attached to the respondents' June 27, 2018 response to this petition, and represent the most up-to-date description of these immigration proceedings available to the court.

§ 7206(1), and was sentenced to six months imprisonment. As Chikerema's sentence drew to a close, immigration officials encountered the petitioner while he was incarcerated at Moshannon Valley Correctional Institution. On October 11, 2017, immigration officials served Chikerema with a Notice to Appear charging him with being removable from the United States pursuant to § 237(a)(2)(A)(iii) of the INA due to his conviction of an aggravated felony as defined in § 101(a)(43)(m) of the INA, a law relating to an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.00, or is described in the Internal Revenue Code of 1986, § 7201 (relating to tax evasion) as an offense in which the revenue loss to the Government exceeds $10,000.00. On November 7, 2017, an immigration judge sustained the charge of removability against Chikerema. One week later, on November 14, 2017, Chikerema was remanded into ICE custody and has remained in continuous immigration detention for the past 17 ½ months.

During this time, Chikerema has been actively contesting his removal from the United States. Thus, on November 30, 2017, Chikerema sought to stave off removal by asserting a claim of a fear of persecution if returned to Zimbabwe. On January 16, 2018, Chikerema had a merits hearing before an immigration judge to present his claims of withholding of removal and protection under the Convention Against Torture. Two weeks later, on February 26, 2018, an immigration judge denied all of Chikerema's applications for withholding. Chikerema appealed that

decision to the Board of Immigration Appeals (BIA). The last status update provided to the court by the respondents indicated that this case was still pending in June of 2018. (Doc. 8.)

During this protracted 17 ½ month period of removal litigation, Chikerema has remained continuously in immigration custody and has not received any individualized bond consideration. This continuing custody without any bond consideration forms the gravamen of this federal habeas corpus petition, which seeks relief in the form of an order directing an individualized bond hearing. This petition is fully briefed by the parties (Docs. 1 and 8), and is, therefore, ripe for resolution.

In January and March of 2019, this case was referred to the undersigned. Upon a review of the record, for the reasons set forth below, and given the current state of the law as it relates to individualized bond consideration for criminal aliens awaiting removal, we believe that Chikerema is entitled to a bond hearing before an immigration judge. Therefore, we recommend that this petition be granted to the extent that the petitioner is afforded such a hearing.

## II. <u>Discussion</u>

### A. <u>The Development of Due Process Principles Relating to Detention of Criminal Aliens</u>

In a legal landscape where the particular factual context often defines the nature of substantive constitutional rights, this case presents a very specific factual scenario. The petitioner is a criminal alien, who has now been held in mandatory

detention for 17 ½ months as he has litigated legal claims concerning his removal from the United States. During this protracted period Chikerema has remained detained in a pre-removal status without having received any individualized bond consideration from an immigration judge.

Over time the legal landscape for such alien detainees has shifted and changed. Initially, as a matter of statutory interpretation, this detention appears to be compelled by statute. Section 1226(c) of Title 8, United States Code, directs the Attorney General to detain certain criminal aliens pending removal. 8 U.S.C. § 1226(c). By enacting this mandatory detention requirement for a sub-class of criminal aliens, Congress was responding to specific, immigration concerns caused by the failure to timely deport these aliens. As the Supreme Court has noted:

> Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens. See, e.g., Criminal Aliens in the United States: Hearings before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48, p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens alone cost $724 million in 1990). Criminal aliens were the fastest growing segment of the federal prison population, already constituting roughly 25% of all federal prisoners, and they formed a rapidly rising share of state prison populations as well. Id., at 6-9. Congress' investigations showed, however, that the INS could not even identify most deportable aliens, much less locate them and remove them from the country. Id., at 1. One study showed that, at the then-current rate of deportation, it would take 23 years to remove every criminal alien already subject to deportation. Id., at 5. Making matters worse, criminal aliens who were deported swiftly reentered the country illegally in great numbers. Id., at 3.The INS' near-total inability to remove deportable criminal aliens imposed more than a monetary cost

on the Nation. First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104-249, p. 7 (1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention of several classes of criminal aliens. In this case, it appears that the petitioner falls within this class of criminal aliens who are subject to the mandatory detention provisions of 8 U.S.C. § 1226(c). However, this finding does not end our inquiry. Rather, it constitutes the beginning of this inquiry. Having concluded as a matter of statutory construction that Chikerema is initially subject to this mandatory detention, we must then consider whether the duration of this detention is now unreasonable.

The starting point of this analysis is the United States Supreme Court's decision in Demore v. Kim, 538 U.S. 510 (2003). In Demore, the Supreme Court found that § 1226(c)'s mandatory detention provision does not, by itself, violate due process, holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet, while reaching the conclusion that mandatory detention of certain criminal aliens did not violate due process, the Supreme Court emphasized the very brief duration of most removal proceedings, which rarely exceeded five months, id. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his

own actions, which delayed the entry of a final removal order. Id., at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the Court held that the fact of this mandatory detention did not violate due process.

Thus, Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Therefore, while Demore addressed the due process issues that arise from the mere fact that, for certain aliens, detention pending removal is mandatory, subsequent cases have held that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. Moreover, in those instances where the period of detention has become excessive, courts are obliged to grant habeas corpus relief to detained aliens. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008

WL 2593806 (M.D. Pa. June 27, 2008); <u>Prince v. Mukasey</u>, 593 F. Supp. 2d 727 (M.D. Pa. 2008); <u>Madrane v. Hogan</u>, 520 F. Supp. 2d 654 (M.D. Pa. 2007).

Initially, the courts adopted an as-applied approach to constitutional challenges to prolonged immigration detention, and focused upon several benchmarks when defining the contours of this constitutional protection against excessive detention pending removal proceedings. First, in assessing these claims, courts looked to the duration of the detention. Thus, in general, pre-removal detentions spanning a period of months did not present substantial constitutional issues. <u>See e.g.</u>, <u>Demore</u>, 538 U.S. at 531 (6 months); <u>Rodrigues v. Holder</u>, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention); <u>Slebo v. District Director</u>, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009) (Munley, J.) (8 months); <u>Rodney v. Mukasey</u>, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009) (Muir, J.) (18 months); <u>Wright v. Bureau of Immigration and Customs Enforcement</u>, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007) (Conner, J.) (7 months).

In contrast, periods of detention which exceeded one year, like the detention currently experienced by Chikerema, triggered more substantial constitutional concerns and often warranted relief, even under this as-applied test. <u>See, e.g.</u>, <u>Tijani</u>, 430 F.3d 1241 (2 years 8 months); <u>Ly</u>, 351 F.3d 263 (500 days); <u>Alli</u>, 2009 WL 2430882 (9 and 20 months); <u>Occelin</u>, 2009 WL 1743742 (2 years); <u>Victor</u>, 2008 WL

5061810 (16 months); Wilks, 2008 WL 4820654 (2 years); Prince, 593 F. Supp.2d 727 (16 months); Madrane, 520 F. Supp. 2d 654 (3 years).

In practice, a non-exhaustive list of the factors that courts have traditionally considered when conducting this as-applied due process analysis has included:

> "(1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in Demore; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the alien and the government during the removal proceedings." Hernandez v. Sabol, 823 F. Supp. 2d 266, 273 (M.D. Pa. 2011) (citing Alli v. Decker, 644 F.Supp.2d 535, 543-45 (M.D. Pa. 2009), rev'd in part, vacated in part on other grounds, 650 F.3d 1007 (3d Cir. 2011) ); see also Reid v. Donelan, 819 F.3d 486, 500 (1st Cir. 2016), cert. denied, 138 S. Ct. 1547 (2018).

Vega v. Doll, No. 3:17-CV-01440, 2018 WL 3765431, at *10 (M.D. Pa. July 11, 2018), report and recommendation adopted, No. CV 3:17-1440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018).

Then, in 2015, the Court of Appeals provided us with a more precise analytical paradigm to use when adjudicating claims of prolonged detention raised by criminal aliens who were being detained pending completion of removal proceedings. In Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469 (3d Cir. 2015), the Court of Appeals outlined the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S. Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious

crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. <u>Id</u>. at 521, 123 S. Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. <u>Id</u>. at 531, 123 S. Ct. 1708. However, as we discuss below, we read <u>Demore</u> as also recognizing that there are limits to this power. <u>Diop</u>, 656 F.3d 221; <u>Leslie v. Attorney Gen. of the United States</u>, 678 F.3d 265 (3d Cir. 2012). When the Supreme Court upheld the constitutionality of the law in <u>Demore</u>, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. <u>Demore</u>, 538 U.S. at 523, 123 S. Ct. 1708 (citing <u>Reno v. Flores</u>, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " <u>Id</u>. at 521, 123 S. Ct. 1708 (quoting <u>Mathews v. Diaz</u>, 426 U.S. 67, 79–80, 96 S. Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. <u>Id</u>. at 526, 123 S. Ct. 1708 (quoting <u>Flores,</u> 507 U.S. at 313, 113 S.Ct. 1439); <u>see also</u> <u>Carlson v. Landon</u>, 342 U.S. 524, 72 S. Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

<u>Chavez-Alvarez</u>, 783 F.3d at 472-73.

Thus, the court in <u>Chavez-Alvarez</u> recognized that <u>Demore</u> held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, in <u>Chavez Alvarez</u>, the Court also acknowledged that there remains an independent responsibility to assess whether the

duration of any mandatory detention is to ensure that this detention is not so extended and unreasonable as to violate due process.

Further, the Court in <u>Chavez-Alvarez</u> provided guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," <u>id.</u>, at 474, the Court enjoined us that there are several guideposts that we should consider. First, in a case where an alien is prosecuting a good-faith challenge to his or her removal from the United States, the appellate court held that,

> [B]eginning sometime after the six-month time frame considered by <u>Demore</u>, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary.

<u>Id.</u>, at 478.

Thus, <u>Chavez-Alvarez</u> prescribed a six-month-to-one-year time continuum within which individualized bond consideration should take place. In prescribing this six-month-to-one-year time frame during which the presumption of detention is sufficiently eroded that individualized bond consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the Court, the immigration statute

" 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Id., at 475. Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011).

While Chavez Alvarez provided this additional measure of analytical clarity to decision-making in this field, both Chavez Alvarez and the principal appellate case upon which it relied, Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011), contained within them the seeds of a future ambiguity, since these decisions suggested two alternate rationales for imposing 6-to-12 month presumptively reasonable time frame for mandatory immigration detention, beyond which an alien was entitled to a bond hearing. In Diop and Chavez-Alvarez, the appellate court relied upon basic due process principles, as well as a closely related legal doctrine, the principle of constitutional avoidance, to support this imposition of these presumptive time frames. The doctrine of constitutional avoidance is a canon of statutory interpretation which calls upon us, whenever possible, to construe a statute in a way which avoids a direct conflict between the statute and the Constitution. In

Diop and Chavez-Alvarez, the Court of Appeals relied, in part, upon the doctrine of constitutional avoidance to read time limits on detention into the immigration statutes.

These references to the doctrine of constitutional avoidance in Diop and Chavez-Alvarez in fashioning this presumptively reasonable period of detention would later create confusion when, in 2018, the United States Supreme Court decided Jennings v. Rodriguez, 583 U.S. ___, 138 S. Ct. 830 (2018). In Jennings, the Supreme Court expressly rejected the Ninth Circuit's determination in Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015) (Rodriguez III), that 8 U.S.C. §§ 1225, 1226(a), and 1226(c) require bond hearings after six months of immigration detention. See Jennings, 138 S. Ct. at 836. In reversing this decision, the Supreme Court held that the Ninth Circuit improperly applied the canon of constitutional avoidance to find that bond hearings were required under the relevant statutory provisions, id., noting that the plain text of 8 U.S.C. § 1226(c) mandates detention until the completion of proceedings, and that these provisions cannot be read to limit detention to six months. See id., at 845, 847. Significantly, however, the Supreme Court did not address the constitutional question of whether aliens had a due process right to a pre-removal bond hearing after some period of detention had elapsed. Instead, the Court "remand[ed] the case to the Court of Appeals to consider the [due process questions] in the first instance." Jennings, 138 S. Ct. at 851.

In the wake of Jennings, the government has argued that the Jennings decision entirely abrogated Chavez-Alvarez. If Chavez-Alvarez was simply a decision which rested exclusively upon the canon of constitutional avoidance, then this argument would undoubtedly be correct. In contrast, if Chavez-Alvarez relied upon constitutional due process principles to define the presumptively reasonable duration of immigration detention without a hearing, then Jennings' holding, which eschewed any due process analysis, would not have completely abrogated the rule announced in Chavez-Alvarez. Presented with this shifting legal landscape and these ambiguities, judges of this court have reached competing conclusions. Some have suggested that Jennings abrogated Chavez-Alvarez. See, e.g., Chica-Iglesia v. Lowe, No. 1:18-CV-0035, 2018 WL 1960438, at *3 (M.D. Pa. Apr. 25, 2018); Coello-Udiel v. Doll, No. 3:17-CV-1414, 2018 WL 2198720, at *1 (M.D. Pa. May 14, 2018); Destine v. Doll, No. 3:17-CV-1340, 2018 WL 3584695, at *2 (M.D. Pa. July 26, 2018); Fatule-Roque v. Lowe, No. 3:17-CV-1981, 2018 WL 3584696, at *2 (M.D. Pa. July 26, 2018); Fernandez v. Lowe, No. 3:17-CV-2301, 2018 WL 3584697, at *3 (M.D. Pa. July 26, 2018) ; Okyere v. Doll, No. 1:18-CV-178, 2018 WL 3585080, at *3 (M.D. Pa. July 26, 2018). Others have considered Chavez-Alvarez a rule of constitutional dimension and suggested that this ruling may remain unaffected by the narrow Jennings holding, which was limited to the canon of

constitutional avoidance, a rule of statutory interpretation. See e.g., Vega v. Doll, No. CV 3:17-1440, 2018 WL 3756755, at *3 (M.D. Pa. Aug. 8, 2018).

The Court of Appeals has added some further measure of clarity, while retaining an element of ambiguity, in this legal discussion. In Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d 208, 222 n. 11 (3d Cir. 2018), the appellate court discussed the interplay between the Supreme Court's ruling in Jennings and its own prior decisions in Chavez-Alvarez and Diop, stating that:

> In Diop, applying the canon of constitutional avoidance, we construed § 1226(c) to contain an implicit "reasonable" time limit on the period for which detention without a bond hearing was statutorily authorized. 656 F.3d at 231. This statutory holding has been abrogated by Jennings, where the Court held that the text of § 1226(c) is clear and that "detention [under § 1226(c) ] may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Jennings, 138 S.Ct. at 847 (quoting 8 U.S.C. § 1226(c) ). Diop, however, also reached a constitutional holding and found that "when detention becomes unreasonable, the *Due Process Clause* demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." 656 F.3d at 233 (emphasis added); see also id. at 223 ("[T]he Due Process Clause of the Fifth Amendment to the Constitution requires that the Government establish that continued detention is necessary to further the purposes of [§ 1226(c) ]."); id. at 235 (holding that Diop's detention constituted "a violation of the Due Process Clause"). We reasoned, *inter alia*, that "[t]he constitutionality of [mandatory detention] is a function of the length of the detention" and that "[a]t a certain point, continued detention ... *becomes unconstitutional* unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purpose of preventing flight and dangers to the community." Id. at 232 (emphasis added). Since we hold that Guerrero-Sanchez's detention is governed by § 1231(a)(6) and not § 1226(c), we have no

occasion to determine here whether <u>Diop</u>'s constitutional holding survives <u>Jennings.</u>

<u>Id.</u>

Thus, the Court of Appeals has now reaffirmed that its prior holding in <u>Diop</u> was, in part, a constitutional holding, which found that "when detention becomes unreasonable, the *Due Process Clause* demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." <u>Diop</u>, 656 F.3d at 233 (emphasis added).

As we consider this shifting legal landscape, we must also bear in mind one other principle. "Although the Third Circuit's ultimate rulings in <u>Diop</u> and <u>Chavez-Alvarez</u> [may] have been abrogated by <u>Jennings</u>, and those two cases are no longer binding upon this Court, it does not follow that those two cases should be ignored. The constitutional reasoning that underlay the Third Circuit's invocation of the constitutional avoidance canon still provides some persuasive guidance as to how this Court should address § 1226(c) claims." <u>Santos v. Lowe</u>, No. 1:18-CV-1553, 2019 WL 1468313, at *3 (M.D. Pa. Apr. 3, 2019). In short, "[e]ven if <u>Jennings</u> effectively abrogated <u>Diop</u> and <u>Chavez-Alvarez</u>, their constitutional considerations still retain persuasive value." <u>Vega v. Doll</u>, No. 3:17-CV-01440, 2018 WL 3765431, at *8 (M.D. Pa. July 11, 2018), <u>report and recommendation adopted,</u> No. CV 3:17-1440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018).

Mindful of these legal guideposts, we turn to a consideration of the prolonged detention experienced by Chikerema in this case.

## B.     The Petitioner is Entitled to an Individualized Bond Hearing.

Applying these principles to the instant case, we recommend that this petition for writ of habeas corpus be granted, and that Chikerema be afforded an individualized bond hearing. At the outset, if we construe the holding in Chavez-Alvarez—that "beginning sometime after the six-month time frame considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute," Chavez-Alvarez, 783 F.3d at 478—to be a constitutional holding, then this detention, which now exceeds 17 ½ months, has reached a duration where Chavez-Alvarez suggests that a bond hearing is constitutionally required.

But even if we measure this case against the more generous as-applied due process framework relied upon by courts prior to Chavez-Alvarez, we would still recommend that the petitioner receive an individualized bond hearing. As we have noted, that traditional as-applied due process analysis typically examined four factors:

> "(1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in Demore; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal;

and (4) the conduct of both the alien and the government during the removal proceedings." Hernandez v. Sabol, 823 F. Supp. 2d 266, 273 (M.D. Pa. 2011) (citing Alli v. Decker, 644 F.Supp.2d 535, 543-45 (M.D. Pa. 2009), rev'd in part, vacated in part on other grounds, 650 F.3d 1007 (3d Cir. 2011) ); see also Reid v. Donelan, 819 F.3d 486, 500 (1st Cir. 2016), cert. denied, 138 S. Ct. 1547 (2018).

Vega v. Doll, No. 3:17-CV-01440, 2018 WL 3765431, at *10 (M.D. Pa. July 11, 2018), report and recommendation adopted, No. CV 3:17-1440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018).

In the instant case, an assessment of these four factors weighs in favor of providing Chikerema the basic rudiments of due process—a bond hearing. At the outset, we note that the duration of this detention—17 ½ months—is now more than twice as long as the six-month period identified by the Supreme Court in Demore. Thus, this factor—length of the delay—which courts concede is "the most important," Vega v. Doll, No. 3:17-CV-01440, 2018 WL 3765431, at *10 (M.D. Pa. July 11, 2018), report and recommendation adopted, No. CV 3:17-1440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018), favors granting habeas relief to the petitioner. Bah v. Doll, No. 3:18-CV-1409, 2018 WL 6733959, at *1 (M.D. Pa. Oct. 16, 2018), report and recommendation adopted, No. CV 3:18-1409, 2018 WL 5829668 (M.D. Pa. Nov. 7, 2018) (14 months detention); Vega, 2018 WL 3765431 (20 months detention).

As for the second factor, the probable extent of future removal proceedings, all that can be said with certainty is that additional delay of an undefined duration

will continue to accrue pending any further administrative proceedings or appellate court decisions that may follow from final action by immigration authorities. "Accordingly, this factor weighs slightly in favor of [the petitioner], as there is the potential for further extensive proceedings." <u>Vega</u>, 2018 WL 3765431, at *10.

The third governing consideration, the likelihood that removal proceedings will actually result in removal, is unknowable at this time. However, we note that the government has not shown that this petition is so utterly frivolous or lacking in merit that it can rely upon this factor to deny habeas corpus relief at this time. Moreover, the fact that an immigration judge previously granted an asylum request made by Chikerema suggests that his claims of fear of persecution if he is repatriated to his homeland may have some basis in fact.

Finally, with respect to the fourth factor we should consider, the conduct of both the alien and the government during the removal proceedings, it appears that Chikerema has acted with dispatch contesting his removal and asserting his CAT claim. Instead, the principal agent of delay in this case seems to be that petitioner's claims have remained pending before the BIA for an extended period of time. When we evaluate detention delays in immigration proceedings:

> [T]he legal analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay. Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. In this regard, delays

attributable to the government weigh heavily against the respondents in conducting this analysis.

Tkochenko v. Sabol, 792 F. Supp. 2d 733, 741 (M.D. Pa. 2011) (citing Victor v. Mukasey, No. 08–1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008) (16 months due to government litigation decisions, release ordered)). Therefore, this factor may also weigh against the government in the instant case, where the prolonged duration of these proceedings seems to relate to institutional, rather than individual, delay.

Further, to the extent that Chikerema has initially instigated this delay by contesting his removal, the petitioner is simply exercising his legal rights in an effort to stave off his removal, something he is entitled to do under our system of laws. In the absence of clear evidence of bad faith on the petitioner's part, "given that a variety of due process considerations must be evaluated by the Court, the absence of an improper delay is not ultimately determinative of the instant constitutional analysis." Vega, 2018 WL 3765431, at *11.

In sum, both the duration of the detention experienced by the petitioner to date, and the prospect of an additional undefined period of further detention in the future, weigh in favor of granting relief to the petitioner. The likelihood that removal proceedings will actually result in removal is unknown and unknowable at this time. Accordingly, this factor warrants little weight in our merits evaluation. Finally, much of the delay in this case seems to be an institutional delay by the government in adjudicating this matter, delay which cannot be attributed to Chikerema. In any

event, the petitioner is entitled to litigate these claims and "given that a variety of due process considerations must be evaluated by the Court, the absence of an improper delay is not ultimately determinative of the instant constitutional analysis." Vega, 2018 WL 3765431, at *11.

Therefore, taking all of these factors into consideration, we find that Chikerema has made a sufficient showing to justify habeas relief in the form of an individualized bond hearing. Finding that an individualized bond hearing is appropriate in this case, it is recommended that this Court order that an immigration judge in the first instance conduct this individualized bond hearing. Indeed, the appellate court suggested that, in many instances, this initial bond determination can, and should, be made by the immigration judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez, 783 F.3d at 478 n.12. This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bond questions to immigration judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). Moreover, this course of action is entirely consistent with

settled case law directing such hearings before immigration judges for petitioners whose pre-removal detention falls within the ambit of the ruling in <u>Chavez-Alvarez</u>. <u>See e.g.</u>, <u>Vale v. Sabol</u>, No. 1:15-CV-2249, 2015 WL 8602751, at *1 (M.D. Pa. Dec. 14, 2015); <u>Singh v. Sabol</u>, No. 1:14-CV-1927, 2015 WL 3519075, at *1 (M.D. Pa. June 4, 2015), <u>appeal dismissed</u> (Sept. 9, 2015).

Further, we note that, while we recommend that such a hearing be conducted in this case, nothing in this recommendation should be construed as suggesting what the outcome of that hearing should be. We leave that assessment to the sound discretion of the immigration judge.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the district court GRANT the petition and order an individualized bond hearing for the petitioner within 21 days.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of May 2019.

*/S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge